UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONTINENTAL VINEYARD LLC and
INDECK-PASO ROBLES LLC,

      Plaintiffs,

  v.

RANDY DZIERZAWSKI and VINIFERA WINE
CO., LLC,

      Defendants.

No. 12 C 3375

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

On Plaintiffs' motion for a new trial, the Court held the jury's verdict that Dzierzawski is liable for unfair competition is: (1) inconsistent with the jury's verdict that Dzierzawski is not liable for breach of fiduciary duty of loyalty; and (2) potentially inconsistent with the jury's award of $0 damages for unfair competition. *See* R. 287 (*Cont'l Vineyard LLC v. Dzierzawski*, 2018 WL 6527953 (N.D. Ill. Dec. 12, 2018)) (the "December 12 opinion"). In that same motion, Plaintiffs' also sought a bench verdict on equitable disgorgement.

With respect to the first holding, the Court reasoned that the injury element necessary for liability for unfair competition should also have been sufficient to find liability for breach of fiduciary duty of loyalty. The Court also held, however, that Plaintiffs had failed to preserve an argument for a new trial on the basis of this inconsistency, and that the waiver could be excused only if the inconsistency was "of such great magnitude that it probably changed the outcome of the trial." R. 287 at 7

(quoting *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 434 (7th Cir. 2009)). The Court held further that whether the trial's outcome was impacted depended on "whether there was sufficient evidence for the jury to have imposed damages for a breach of fiduciary duty that they did not consider for unfair competition." R. 287 at 8-9.

With respect to the second holding, the Court reasoned that the evidence may have been such that it was impossible for the jury to find liability for unfair competition without finding damages.

The Court determined that further briefing was required on these two issues regarding consistency of the verdict, as well as whether disgorgement was appropriate. The parties submitted briefs, which the Court has now considered. For the following reasons, the Plaintiffs' motion for a new trial is denied but the Court finds for Plaintiffs on their claim for disgorgement.

**I. Inconsistency between the Unfair Competition and Breach of Fiduciary Duty Verdicts**

**A. Excuse**

In the December 12 opinion, the Court noted that while "the jury was instructed to consider whether Plaintiffs lost profits due to Dzierzawski's conduct" when considering both unfair competition and breach of fiduciary duty, "only the instruction for breach of fiduciary duty instructed the jury to consider whether Dzierzawski was unjustly enriched by his breach." R. 287 at 7-8. Since the instruction for unfair competition did not instruct the jury to consider whether Dzierzawski was unjustly enriched, the Court reasoned that the jury's finding of liability on unfair

2

competition but not breach of fiduciary duty resulted in the jury not considering unjust enrichment at all. For this reason, the Court held that the inconsistency in the verdicts "probably changed the outcome of the trial," and Plaintiffs' failure to raise this issue before the jury was discharged could be excused.

But the Court's reasoning failed to account for the fact that Plaintiffs brought unjust enrichment as a stand-alone claim, and the jury issued a separate verdict in Defendants' favor on unjust enrichment. Thus, even though the jury found for Defendants on the breach of fiduciary duty claim and did not reach the question of damages in assessing that claim, the jury nevertheless considered whether unjust enrichment occurred.

The instructions for damages under breach of fiduciary duty of loyalty referenced unjust enrichment:

> Another potential form of damages for a breach of fiduciary duty claim is disgorgement, which is measured by the unjust enrichment either Defendant received from either Plaintiff.

R. 263 at 34. The jury was also instructed on rendering a verdict on unjust enrichment:

> Plaintiffs claim that Defendants Randy Dzierzawski and Vinifera Wine Co. LLC were unjustly enriched by their conduct. To succeed under this claim, Plaintiffs must prove the following:
>
> (1) either or both Defendants received a benefit from either or both Plaintiffs; and
>
> (2) under the circumstances, it would not be fair or equitable to either or both Plaintiffs for the Defendants to retain the benefit.

3

> If you find that Plaintiffs have proven the above two elements, then you must find for the Plaintiffs as to this claim. If you find that Plaintiffs have not proven the above two elements, then you must find for Defendants on this claim.

R. 263 at 31. The jury found for Defendants on the unjust enrichment claim, answering "no" to the verdict form questions "Have Plaintiffs proven that [Randy Dzierzawski or Vinifera Wine Co. were] unjustly enriched with respect to Continental Vineyards, LLC and/or Indeck-Paso Robles, LLC?" R. 272 at 5, 9.

There is no material difference (if any difference at all) between the jury's consideration of the unjust enrichment instruction and the damages the jury would have considered if it had reached damages under the instruction for breach of fiduciary duty. Because the jury considered damages for unjust enrichment, its failure to consider damages for breach of fiduciary duty could not have "changed the outcome of the trial." Thus, the Court was mistaken when it determined that there was a potential basis to excuse Plaintiffs' failure to preserve the inconsistency argument. The jury's verdict on unjust enrichment removes that potential excuse.

### B. Waiver

Plaintiffs argue, however, that the Court erred in finding waiver in the first place because their post-trial motion under Rule 59 was sufficient to preserve the issue. The December 12 opinion sets forth the authority for the Court's waiver finding. In sum, the Court relied on cases noting that the Seventh Circuit has not addressed whether an objection to an inconsistent general verdict must be raised before the jury is discharged. *See* R. 287 at 5 (citing *Fox v. Hayes*, 600 F.3d 819, 844

4

(7th Cir. 2010); *Pearson v. Welborn*, 471 F.3d 732, 739 (7th Cir. 2006)). In *Fox*, the Seventh Circuit noted that other circuits subscribe to such a rule. 600 F.3d at 844 (citing *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 83 (2d Cir. 2006); *Oja v. Howmedica, Inc.*, 111 F.3d 782, 790 (10th Cir. 1997); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995)). Separately, the Seventh Circuit has acknowledged the benefits of such a rule in the context of inconsistency between a general liability verdict and special interrogatories. *See Strauss v. Stratojac Corp.*, 810 F.2d 679, 683-84 (7th Cir. 1987).

Plaintiffs attack the Court's waiver finding by citing a number of cases decided prior to the more recent Seventh Circuit decisions cited above. Plaintiffs note that in *Gordon v. Degelmann*, decided in 1994, the court stated, "There is no priority among inconsistent verdicts. If the problem is not caught before the jury disbands (and no one noticed this conflict until post-trial motions), the proper thing to do is to hold a new trial with respect to all affected parties." 29 F.3d 295, 298-99 (7th Cir. 1994). But *Gordon* concerned inconsistency of verdicts among multiple defendants. Resolving the inconsistency in that case required either imposing liability on a defendant the jury absolved or relieving a defendant of liability the jury imposed. *See id.* at 298 ("[T]he judge reasoned that the jury's verdict in [the individual defendant's] favor was conclusive in favor of the Village. You can't have vicarious liability without primary liability. The district court did not explain why it started from the verdict absolving [the individual defendant]. Why not the other way 'round? One could say that because the jury awarded damages against the Village, it must have meant to hold [the

5

individual defendant] liable."). There can be no doubt that such inconsistency impacts the outcome of the trial. As discussed, such serious inconsistency is not present here.

Plaintiffs also note that in *Timm v. Progressive Steel Treating*, decided in 1998, the court stated, "If inconsistency escapes notice until after the jury has disbanded, the proper thing to do is to hold a new trial." *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998). But in that case the court found that the verdict was *not* inconsistent, so waiver was not at issue. Niether was waiver at issue in another case Plaintiffs mention, *American Casualty Co. v. B. Cianciolo, Inc.*, 987 F.2d 1302 (7th Cir 1993).

Plaintiffs also cited *Turyna v. Martam Construction*, 83 F.3d 178 (7th Cir. 1996). But that case, decided in 1996, concerned an unusual circumstance not present here. When the jury began deliberations, the district court judge warned the parties that they must be able to return to the courtroom within five minutes to receive the jury's verdict. This order practically required the parties to remain in the courtroom while the jury deliberated. Rather than be tied to the courtroom, the parties waived their presence at the reading of the verdict. As a result, the Seventh Circuit noted, "no one with any incentive to take action was present" when the verdict was read. *Id.* at 180. Hence, the parties had no true opportunity to object to the verdict's inconsistency until post-trial motions. The district court found waiver, and the Seventh Circuit remanded. But the Seventh Circuit did not directly address the waiver issue, instead focusing on the impact of the inconsistency. And in any case, the circumstances of the waiver in *Turyna*—the absence of counsel for the reading of

6

the verdict in response to the district court's strict scheduling—are materially different from the circumstances present in this case.

None of the cases cited by Plaintiffs directly address whether it was appropriate for the Court to find waiver in this case. As discussed, more recent Seventh Circuit precedent suggests that a waiver finding is appropriate here. Plaintiffs contend that the recent precedent supporting the Court's finding did not consider the older decisions which Plaintiffs cite. But while *Fox* (decided in 2010) and *Pearson* (decided in 2006) did not analyze the older decisions in detail, they cited a case that did, indicating that the court considered their reasoning. *See Fox*, 600 F.3d at 844, and *Pearson*, 471 F.3d at 739 (citing *Carter v. Chi. Police Officers*, 165 F.3d 1071, 1079 (7th Cir. 1998) (citing *Gordon* and *Timm*)). Thus, the Court will not reconsider its reliance on *Fox* and *Pearson* in light of older and distinguishable Seventh Circuit decisions.

Plaintiffs also argue that the Court's waiver finding was in error because it was based on the Court's perception that the inconsistency was a product of erroneous jury instructions. As the Court discussed in its December 12 opinion, circuit courts finding waiver of the inconsistency objection if it is not raised before the jury is discharged do so pursuant to an interpretation of Federal Rule of Civil Procedure 51 governing jury instructions and preserving claims of error. R. 287 at 5 (citing *Kosmynka*, 462 F.3d at 83; *Jarvis.*, 283 F.3d at 56; *Oja*, 111 F.3d at 790; *Home Indem.*, 43 F.3d at 1331). Here, Plaintiffs cite those cases to argue that here there was no "error in an instruction actually given," but "the error was solely attributable to the

7

jury's failure to apply the instruction." R. 292 at 7 (quoting *Kosmynka*, 462 F.3d at 84-85 and citing *Jarvis*, 283 F.3d at 56).

Examination of the relevant circuit court decisions belies Plaintiffs' analysis. The three most recent decisions—*Kosmynka, Jarvis*, and *Oja*—concerned products liability cases in which the juries were instructed to make findings on both negligence and strict liability claims. The juries found liability for negligence based on a product defect, but not strict products liability, creating an inconsistency because the product defect necessary to find negligence should also have been sufficient to find strict products liability. There was no contention in any of the cases that the juries misapplied the particular instructions. Rather, the courts held the instructions were erroneous because they did not prevent the juries from rendering inconsistent verdicts.

That is precisely what happened here. There is no claim that either the instruction for breach of fiduciary duty or the instruction for unfair competition was inherently incorrect. And there is no contention that the jury failed to follow either instruction. Rather, correctly following correct instructions, the jury rendered an inconsistent verdict. But as the courts of appeals held in *Kosmynka, Jarvis*, and *Oja*, this constitutes an instructional error that is governed by Rule 51. The Court will not reconsider its waiver finding based on Plaintiffs' disagreement with this analysis.

## II. Potential Inconsistency between Finding of Liability for Unfair Competition with a Finding of $0 Damages

In addition to addressing inconsistency between the unfair competition and breach of fiduciary duty liability verdicts, in the December 12 opinion, the Court also

8

held that the jury's verdict of liability for unfair competition could be inconsistent with its finding of $0 damages if the evidence was such that no reasonable jury could find $0 damages. Damages available under unfair competition are: (1) lost profits and (2) expenses incurred. For purposes of this briefing, Plaintiffs concede that Defendants' expert was a sufficient basis for the jury to find $0 damages for lost profits. *See* R. 292 at 19 ("Given the 'no reasonable jury' standard at issue in this briefing and the wide disparity of expert opinion on the issue of lost profits, and without waiving its right to recover lost profits at a new trial, Continental here does not focus on the evidence related to its lost profits.").

As for expenses, Plaintiffs contend that Defendants' expert's report stated that the minimum amount of expenses Plaintiffs incurred due to Defendants' conduct was $5,000, *see* R. 292 at 19 (quoting R. 226-8 at 41 (¶ 57)), and on that basis it was unreasonable for the jury to find $0 damages, *see* R. 292 at 21. But Defendants' expert's report is not as unequivocal on this issue as Plaintiffs contend. Defendants' expert's report noted damages would be decreased further by the benefit Plaintiffs received from Defendants' work. *See* R. 226-8 at 41 (¶ 57) ("This range [of costs incurred by Plaintiffs] does not include an offset for benefits that Vinifera provided to Continental."). The expert noted that Continental's controller, Joseph Oskorep, concluded in a memorandum written to Continental's owner that Defendants' work to "[e]stablish[] a relationship with the distributors and [secure] a license to sell in Michigan and Illinois has been very helpful to [Plaintiffs]. Also having a full line of product to give to a retailer such as Meijers [sic] was also helpful to establish a

9

pipeline for [Plaintiffs'] wine." R. 226-8 at 50 (¶ 84). At trial, Oskorep testified that Vinifera brokered sales of Continental wine in Illinois and Michigan, R. 268 at 45-46 (1032-33), and that Continental's winemaker, Christopher Cameron, told him that having a full product line, which was made possible by Vinifera, was helpful to Continental, *id.* at 66 (1053:13-19).

Testimony from a number of other witnesses provided further evidence that Dzierzawski's production and promotion of Vinifera wines created opportunities for distribution and sale of Continental wines even though Continental did not have sample wine available. *See, e.g.*, R. 267 at 196-97 (903-04) (Dzierzawski testimony). Consistent with Oskorep's testimony, Dzierzawski testified that Vinifera paid Continental's "compliance" fees in Illinois and Michigan, *id.* at 233 (940), and that Vinifera cleared $180,000 in sales for Continental, *id.* at 144 (851). Cameron also testified that Vinifera "cleared" sales for Continental. R. 268 at 222-24 (1209-11). Additionally, Mark Esterman, the wine buyer for Meijer stores, testified that he never would have bought Continental wine if Vinifera wine hadn't been successful. R. 268 at 124-25 (1111-12). And Noel Orsborn, the sales agent Dzierzawski used, testified that Vinifera helped Continental's wines break into the market. R. 269 at 131-32 (1415-16).

This evidence does not directly place a dollar value on the benefits Vinifera provided to Continental. But Defendants' expert stated that the costs Vinifera imposed on Continental could have been as little as $5,000. And some testimony indicated that Vinifera's benefit to Continental could have been as much as $180,000

10

in cleared sales. This evidence was sufficient for the jury to find that any costs Continental incurred due to Vinifera's actions were off-set by the benefits Vinifera created for Continental. Thus, it was reasonable for the jury to find liability on unfair competition but $0 in damages. Therefore, the jury's verdict was not necessarily inconsistent, and there is no basis for a new trial.

### III. Disgorgement: Findings of Fact & Conclusions of Law

The jury found no damages for unfair competition and found for Defendants on unjust enrichment. And as discussed above, there was sufficient evidence in the record for the jury to render this verdict. But as the Court explained in a pretrial opinion, the jury's verdict is merely advisory on the issue of equitable disgorgement, as it "is an equitable remedy to be imposed by the Court as opposed to a jury." *See* R. 214 at 2 (citing *Client Funding Sols. Corp. v. Crim*, 943 F. Supp. 2d 849, 855-56 (N.D. Ill. 2013) (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012))). The Court made that decision with respect to the breach of fiduciary duty claim. But disgorgement is also available for unfair competition. *See* Restatement (Third) of Unfair Competition § 37 (1995) ("One who is liable to another for deceptive marketing . . . is liable for the net profits earned on profitable transactions resulting from the unlawful conduct[.]"); *see also CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 2 F. Supp. 3d 1029, 1032 (E.D. Mich. 2014) ("It has been said that '[c]ourts will ordinarily award injunctive relief once a party has been found liable for trademark infringement,' even if the jury has found in favor of the plaintiff but awarded no damages." (quoting

11

*Ironclad, L.P. v. Poly–Am., Inc.*, 2000 WL 1400762, at *10 (N.D. Tex. July 28, 2000))). Plaintiffs ask the Court to exercise its equitable powers to disgorge Defendants' profits. Thus, the following are the Court's findings of fact and conclusions of law on Plaintiffs' claim for disgorgement as a remedy for Defendants' liability for unfair competition, with the facts being found by a preponderance of the evidence.

According to the Restatement, disgorgement is an appropriate remedy for unfair competition when:

> the actor engaged in the conduct with the intention of causing confusion or deception; and the award of profits is not prohibited by statute and is otherwise appropriate [based] upon a comparative appraisal of all the factors of the case, including the following primary factors:
> (a) the degree or certainty that the actor benefited from the unlawful conduct;
> (b) the relative adequacy to the plaintiff of other remedies, including an award of damages;
> (c) the interests of the public in depriving the actor of unjust gains and discouraging unlawful conduct;
> (d) the role of the actor in bringing about the infringement or deceptive marketing;
> (e) any unreasonable delay by the plaintiff in bringing suit or otherwise asserting its rights; and
> (f) any related misconduct on the part of the plaintiff.

Restatement (Third) of Unfair Competition § 37. The jury found Defendants intended to cause confusion or deception among the Continental and Vinifera brands. See R. 263 at 29 (unfair competition jury instruction). The question is whether the Court should disgorge Defendants' profits that are attributable to this confusion.

To determine whether any profits are attributable to the brand confusion Defendants caused, the Court must identify in what circumstances that confusion occurred. Defendants generated profit from: (1) selling wine that competed with

12

Continental wine and (2) selling wine that did not compete with Continental wine. Dzierzawski initially formed Vinifera to meet Meijer's demand for moscato and zinfandel wines. Continental did not produce either of these wines. Meijier's wine buyer, Mark Esterman, was aware that Vinifera wines were not produced with grapes from the Continental vineyard because he knew from his visit to the Continental vineyard that Continental did not grow moscato or zinfandel grapes. See R. 268 at 108-11 (1095-98); 136-37 (1123-24). For these reasons, it was impossible for Vinifera's moscato and zinfandel brands to be confused with Continental. And since there was no confusion with respect to the moscato and zinfandel wines, it is not appropriate to order disgorgement of Vinifera's profits from those wines.

But Vinifera also sold wine varietals that Continental produced and sold. In fact, Vinifera purchased from Continental some of the wine bottled and sold by Vinifera. Dzierzawski marketed all these wines together as wines coming from Continental's vineyard. Since some Vinifera brands were sourced from Continental's vineyards and others were not, Dzierzawski's marketing of all Vinifera and Continental brands as being produced with wine from Continental's vineyards likely created confusion among the brands. Vinifera's profits on varietals which Continental grew and sold were based on this confusion.

However, once Dzierzawski resigned from Continental on February 27, 2012, he no longer marketed Vinifera wine as Continental wine. Any profits earned from sales of Vinifera brands created after Dzierzawski left Continental cannot be said to derive from confusion with Continental brands. Only the sales of the Vinifera brands

13

already produced with grapes from Continental vineyards could continue to cause confusion in the market.

These facts demonstrate a high degree of certainty that Defendants profited from confusion between Vinifera and Continental brands. No other factors counsel against ordering Defendants to disgorge those profits. Dzierzawski personally received at least $641,125.34 of those profits. *See* R. 279 at 14 (citing exhibits). The Court orders Defendants to disgorge the profits attributable to the brand confusion described above. The Court relies on Defendants' expert's report to determine the relevant revenues and on Plaintiffs' expert's report to determine the relevant costs and expenses for each time period at issue:

|  | 2011 |
| --- | --- |
| Vinifera Total Sales Revenue = | $1,236,384 (R. 226-8 at 90 (Ex. M-1)) |
| Vinifera Sales Revenue of Wine Competing with Continental = | $592,037 (R. 226-8 at 73 (Ex. G))[1] |
| Minus Production Costs = | $412,439 (R. 187-2 at 50 (Attachment 7))[2] |
| Minus Expenses = | $52,049 (R. 187-2 at 50 (Attachment 7)) |
| **Net Profits to Disgorge =** | **$127,549** |

---

[1] For reasons discussed, the Court subtracted moscato and zinfandel wines to determine sales revenue from wine competing with Continental. *See* R. 226-8 at 73 (Ex. G).

[2] The Court took the total costs and expenses numbers from Plaintiffs' expert report. *See* R. 187-2 at 50. Of course, only a portion of total costs and expenses were derived from wines that competed with Continental. To determine the appropriate portion, the Court determined what percentage of total sales revenue was competing sales revenue, and applied that percentage to costs and expenses.

| 2012 (January 1 – February 27) | |
|---|---|
| Vinifera Total Sales Revenue = | $229,346 (R. 226-8 at 90 (Ex. M-1)) |
| Vinifera Sales Revenue of Wine Competing with Continental = | $154,234 (R. 226-8 at 73 (Ex. G) |
| Minus Production Costs = | $107,958 (R. 187-2 at 50 (Attachment 7)) |
| Minus Expenses = | $9,426 (R. 187-2 at 50 (Attachment 7)) |
| **Net Profits to Disgorge =** | **$36,850** |

| 2012 (February 28 – December 31) | |
|---|---|
| Vinifera Total Sales Revenue = | $2,179,622 (R. 226-8 at 90 (Ex. M-1)) |
| Vinifera Sales Revenue of Wine Competing with Continental = | $705,268 (R. 226-8 at 73 (Ex. G) |
| Minus Production Costs = | $525,571 (R. 187-2 at 50 (Attachment 7)) |
| Minus Expenses = | $81,912 (R. 187-2 at 50 (Attachment 7)) |
| **Net Profits to Disgorge =** | **$97,785** |

| 2013 | |
|---|---|
| Vinifera Total Sales Revenue = | $2,101,329 (R. 226-8 at 90 (Ex. M-1)) |
| Vinifera Sales Revenue of Wine Competing with Continental = | $196,555 (R. 226-8 at 73 (Ex. G) |
| Minus Production Costs = | $144,876 (R. 187-2 at 50 (Attachment 7)) |
| Minus Expenses = | $28,132 (R. 187-2 at 50 (Attachment 7)) |
| **Net Profits to Disgorge =** | **$23,547** |

| 2014 | |
|---|---|
| Vinifera Total Sales Revenue = | $2,172,876 (R. 226-8 at 90 (Ex. M-1)) |
| Vinifera Sales Revenue of Wine Competing with Continental = | $38,106 (R. 226-8 at 73 (Ex. G) |
| Minus Production Costs = | $31,176 (R. 187-2 at 50 (Attachment 7)) |
| Minus Expenses = | $7,419 (R. 187-2 at 50 (Attachment 7)) |
| **Net Profits to Disgorge =** | **-$489**[3] |

**Grand Total = $285,731**

---

[3] This negative total for 2014 shows that Defendants did not profit on these wines. It does not show that Plaintiffs owed money to Defendants. So the Court has not subtracted this amount from the grant total.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion for a new trial, R. 279, is denied. Additionally, the Court finds for Plaintiffs on their claim of disgorgement in the amount of $285,731.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 10, 2019